UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

JOYCE REYNOLDS WALCOTT,

        Plaintiff,

- versus -

UNITED STATES OF AMERICA and
JANE DOE,

        Defendants.

MEMORANDUM AND ORDER
13-CV-3303

APPEARANCES:

  ROBERT G. LEINO, ESQ.
    15 Park Row, 17F
    New York, NY 10038
  By: Robert G. Leino[1]
    *Attorney for Plaintiff*

  LORETTA E. LYNCH
    United States Attorney
    Eastern District Of New York
    271 Cadman Plaza East
    Brooklyn, NY 11201
  By: Ameet B. Kabrawala
    *Attorney for Defendant United States of America*

JOHN GLEESON, United States District Judge:

  Joyce Reynolds Walcott brings this action against the United States and an unidentified Transportation Safety Administration ("TSA") employee based on events occurring at John F. Kennedy International Airport ("JFK") on October 22, 2011 as Walcott passed through security on her way to a flight to Jamaica. Walcott alleges that the TSA employee "in

---

[1] Oral argument in this case was scheduled for October 18, 2013. On the morning of October 18, Mr. Leino requested an adjournment of the argument for medical reasons. Because I find that argument is not necessary to resolve the government's motion to dismiss, I have decided the motion on the basis of the papers submitted.

public, made Walcott spread her legs and then groped Wolcott's genitals, breasts, and buttocks," which caused plaintiff to "sustain[] damages including personal injuries, embarrassment and humiliation." Am. Compl. ¶¶ 9, 11, ECF No. 8. Walcott now sues the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"), for negligence and battery, and the unidentified employee for constitutional violations. The United States has moved to dismiss, arguing that Walcott's claims are not authorized by the FTCA and that the claim against the Jane Doe defendant does not state a constitutional violation. For the following reasons, Walcott's amended complaint will be dismissed.

## DISCUSSION

A.   *The Standard of Review*

The government moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction should be granted if the court is not authorized to adjudicate the plaintiff's claims. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The standards for reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) are the same" as those under Rule 12(b)(6). *Dupree v. Local 32BJ*, No. 10-CV-1894 JG, 2010 WL 3430530, at *1 (E.D.N.Y. Aug. 30, 2010). Therefore, I must "accept the factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Id.* at *2 (internal citation omitted). "However, 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

B.   *Analysis*

1.   *Claims Against the United States Under the FTCA*

2

The FTCA constitutes a partial waiver of the federal government's sovereign immunity. "[T]he FTCA makes the United States liable to the same extent as a private individual under like circumstances, under the law of the place where the tort occurred, subject to enumerated exceptions to the immunity waiver." *Levin v. United States*, 133 S. Ct. 1224, 1228 (2013) (internal citations and quotation marks omitted). A tort claim against the United States that falls into one of the FTCA's exceptions is barred by sovereign immunity.

Key here is the FTCA's intentional tort exception, codified at 28 U.S.C. § 2680(h). That subsection bars FTCA actions for "[a]ny claim arising out of assault, battery," or a number of other intentional torts. *Id*. However, the same subsection also includes a proviso – an exception to the exception – that permits certain intentional tort actions, including for assault and battery, against "investigative or law enforcement officers of the United States Government." *Id.* The proviso further defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id*. Thus, Walcott's battery claim, Count II of the Amended Complaint, is presumptively barred by the intentional tort exception to the FTCA – unless the Jane Doe TSA officer is an "investigative or law enforcement officer" within the meaning of the proviso.

Although plaintiff's Amended Complaint alleges that Jane Doe is an "investigative or law enforcement officer, employed by the USA at JFK Airport," Am. Cmpl. ¶ 3, the government persuasively argues that this is a legal conclusion, so I need not assume its truth. *See Iqbal*, 556 U.S. at 678. Furthermore, given the minimal recitation of facts in the Amended Complaint, the only reasonable inference is that Jane Doe was employed by the TSA

3

as a screener. *See* Def.'s Mem. in Support of Mot. to Dismiss, ECF No. 11, at 6 (citing Declaration of John C. Allen, ECF No. 12 ("Allen Dec.")).[2]

As several other district courts have concluded, TSA screeners are not "investigative or law enforcement officer[s]" within the meaning of § 2680(h). That is so because they are not "empowered by law" to perform any of the qualifying functions, that is, "to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id*.

Postponing the more difficult question of whether screeners may "execute searches," it is clear that screeners do not "seize evidence" or "make arrests for violations of Federal law." As explained by John C. Allen, the Assistant Federal Security Director for Screening, TSA screeners are not authorized to make arrests or seize evidence for violations of federal law. Rather, duties of that type are delegated separately to "law enforcement officer[s]" under 49 U.S.C. § 114(p), with different job qualifications and responsibilities. For example, Congress required the TSA to deploy or authorize "*law enforcement personnel* authorized to carry firearms at each airport security screening location to ensure passenger safety and national security." 49 U.S.C. § 44901(h)(1) (emphasis added). Similarly, the TSA is authorized by § 114(p) to designate an individual as a "law enforcement officer," with responsibilities that include carrying firearms, making arrests, and executing warrants. At JFK, such functions are fulfilled by police officers of the Port Authority of New York and New Jersey. *See* Allen Dec. ¶¶ 5-6.

The distinction between law enforcement officers and screeners is best shown by example. TSA screeners do check passengers and their bags for items, such as explosives, that are simply contraband under federal law. But screeners are primarily looking for items – such as

---

[2] The plaintiff bears the burden of establishing subject matter jurisdiction, and a court may rely on materials outside the pleadings to assess whether jurisdiction lies. *See Makarova*, 201 F.3d at 113.

knives, baseball bats, or liquids – which are prohibited on airplanes, but not illegal to possess. If a screener does find something that is simply illegal to possess under law, such as child pornography or illegal drugs, the screener is not authorized to arrest the person or seize the item, but instead must call a Port Authority police officer to do so. *See* Allen Dec. ¶ 8.

In this vein, I conclude that TSA screeners also are not "empowered by law to execute searches . . . for violations of Federal law" within the meaning of § 2680(h). The Second Circuit has held that this language only includes the broader power that a police officer enjoys to conduct a wide array of searches, but does not include narrow, specific searches and seizures – such as the power of a parole officer to seize a parolee's contraband upon consent. *See Wilson v. United States*, 959 F.2d 12, 15 (2d Cir. 1992) ("Because the power to seize evidence depends on the consent of the person from whom the evidence is to be taken, however, parole officers lack the seizure power contemplated by section 2680(h), and thus cannot be considered law enforcement personnel.").

The conclusion that TSA screeners do not fall within the law enforcement proviso has been reached by several other courts. For example, the court in *Weinraub v. United States* held that TSA screeners did not fall under the law enforcement proviso:

> Congress chose to define "investigative or law enforcement officer," for purposes of the law enforcement proviso, to include officers that perform any one of three functions: the execution of searches, the seizure of evidence, or the making of arrests. Each of these are commonly understood to be traditional law enforcement functions performed by the likes of FBI agents, Bureau of Prisons officers, postal inspectors, and INS agents, all of which have broad investigative and law enforcement powers and have been found to fall within the law enforcement proviso. These traditional investigative or law enforcement officers have broad search, seizure, and/or arrest powers that they may exercise in a variety of circumstances, which stands in stark contrast to the TSA screener's power that is limited to pre-boarding searches for certain prohibited items. Therefore, it would be unreasonable to interpret

5

> "to execute searches" to include the TSA screener's performance of narrowly focused, consensual searches that are administrative in nature, when considered in light of the other traditional law enforcement functions (i.e., seizure of evidence and arrest) that Congress chose to define "investigative or law enforcement officers."

927 F. Supp. 2d 258, 262-63 (E.D.N.C. 2012) (internal citations omitted). That reasoning, which I find persuasive, was also adopted by the court in *Corbett v. Transp. Sec. Admin.*, No. 12-20863-CV, 2012 WL 8963931, at *9-10 (S.D. Fla. Nov. 16, 2012), and accords with the results in several other cases. *See, e.g., Coulter v. U.S. Dep't of Homeland Sec.*, CIVA 07-4894 (JAG), 2008 WL 4416454, at *7-9 (D.N.J. Sept. 24, 2008); *Welch v. Huntleigh USA Corp.*, 04-663 KI, 2005 WL 1864296, at *5 (D. Or. Aug. 4, 2005).

It is true that one case, *Pellegrino v. U.S. Transp. Sec. Admin.*, 855 F. Supp. 2d 343 (E.D. Pa. 2012), reached the opposite result. But I do not find its reasoning persuasive. In particular, in ruling that TSA screeners conduct searches within the meaning of the law enforcement proviso, the *Pellegrino* court relied on the Third Circuit's holding that airport security searches are administrative searches subject to the Fourth Amendment. *See id.* at 356-57 (citing *United States v. Hartwell*, 436 F.3d 174, 177 (3d Cir. 2006)). But in context, the meaning of "empowered by law to execute searches . . . for violations of Federal law" under § 2680(h) is narrower than the meaning of a "search" under the Fourth Amendment – that is, just because something is an administrative search under the Fourth Amendment, it doesn't mean the person doing the search is a law enforcement officer under § 2680(h). After all, the seizure of property by parole officers in *Wilson* would also fall under the Fourth Amendment, but the Second Circuit still held that parole officers fall outside the law enforcement proviso because such seizures require consent. 959 F.2d at 15.

6

Finally, to the extent that there is uncertainty about whether Congress intended to encompass TSA screeners within the law enforcement proviso, the uncertainty must be resolved against the waiver of sovereign immunity. *See Akutowicz v. United States*, 859 F.2d 1122, 1125 (2d Cir. 1988) (the FTCA's limited waiver of sovereign immunity "must be strictly construed in favor of the government" (internal quotation marks omitted)). If Congress means to permit lawsuits arising from the TSA's 1.7 million daily screenings, *see* H. Res. No. 156, 113th Cong. (2013), it may easily do so in a clearer fashion.

Walcott's negligence claims under the FTCA are also barred because they essentially restate the intentional tort claims. Under Second Circuit precedent, the intentional tort exception "'does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery,'" and therefore it bars claims "'that sound in negligence but stem from a battery committed by a Government employee.'" *Guccione v. United States*, 847 F.2d 1031, 1034 (2d Cir. 1988) (quoting *United States v. Shearer*, 473 U.S. 52, 55 (1985) (plurality opinion of Burger, C.J.)). Walcott's negligence claims are based on the same factual allegations as the intentional tort claims and "aris[e] . . . out of" the assault or battery claims. They are therefore barred. *See id.* (noting that the Second Circuit, and other circuits, have adopted the view that "in the context of mixed claims of negligent and intentional conduct," § 2680(h) operated as a total bar to suit).

2.   *Claim Against Jane Doe*

Although the government does not represent the unidentified TSA officer, it also argues that plaintiff's claims against her should be dismissed.

It is true that I have the inherent power to dismiss claims that are frivolous. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (per curiam)

(citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir.1995) (per curiam)). And to the extent that plaintiff argues that Jane Doe violated plaintiff's Fourth Amendment rights by engaging in a warrantless search without probable cause, her argument is frivolous. Contrary to the Amended Complaint's allegations, *see* Am. Cmpl. ¶¶ 29-30, searches by TSA screeners are reasonable as administrative searches under the Fourth Amendment, and as such, neither probable cause nor a warrant is required for them to be permissible. *See Hartwell*, 436 F.3d at 177-81; *United States v. Aukai*, 497 F.3d 955, 960 (9th Cir. 2007) (en banc). These claims cannot survive.

Walcott also alleges, "[i]n the alternative, or additionally," claims for battery and negligence against Jane Doe. *See* Am. Cmpl. ¶¶ 31-32. But stated against the individual officer, these are state-law tort claims for which plaintiff has not established, or even alleged, federal jurisdiction. *See* Am. Cmpl. ¶¶ 6-7 (alleging jurisdiction based on the United States as a defendant under 28 U.S.C. § 1346, and based on federal questions under 28 U.S.C. § 1331). Thus, plaintiff's claims against the individual will also be dismissed. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

## CONCLUSION

For the reasons given above, all of Walcott's claims are dismissed.

So ordered.

John Gleeson, U.S.D.J.

Dated: October 18, 2013
      Brooklyn, New York

8